IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **LARRY M. GENTILELLO, M.D.**, | § |
| | § |
| Plaintiff, | § |
| v. | § Civil Action No. **3:07-CV-1564-L** |
| | § |
| **ROBERT V. REGE, M.D.** | § |
| and **ALFRED G. GILMAN, M.D., PhD.**, | § |
| | § |
| Defendants. | § |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Joint Motion to Dismiss, filed October 2, 2007. After careful consideration of the motion, briefs, response, reply, record, and applicable law, the court **grants in part** and **denies in part** Defendants' Joint Motion to Dismiss.

### I. Procedural and Factual Background

This case arises from a dispute over the demotion of a university professor. Larry Gentilello, M.D. ("Gentilello" or "Plaintiff") is a tenured professor at the University of Texas Southwestern Medical School in Dallas ("UTSW Medical School") and formerly served as Chair of Division of Burn, Trauma, and Critical Care ("Division Chair") as well as Distinguished C. James Carrico, M.D. Chair in Trauma ("Distinguished Chair"). Gentilello was removed from his chair positions by his immediate supervisor, Robert Rege, M.D., Chair of the Department of Surgery at UTSW Medical School ("Rege"), and Rege's immediate supervisor, Alfred Gilman, M.D., PhD. and Dean of the UTSW Medical School ("Gilman," together with Rege, "Defendants").

The facts of this case are largely undisputed. On March 5, 2007, Rege informed Gentilello by letter that he would be removed from his Division Chair and Distinguished Chair positions. The

letter cited the following reasons for the action: Gentilello's unprofessional conduct, intimidation of others, inflammatory remarks, and unwillingness to compromise. This letter followed a conversation between Rege and Gentilello concerning the lack of supervision of residents and teaching physicians and the resulting non-compliance with oversight procedures. In this conversation, Plaintiff mentioned at least two incidents indicative of the lack of supervision: one involving the failure to notify Plaintiff of a scheduled surgery for one of his patients until after it was in progress and another involving a resident's failure to follow proper pre-operative procedures that would have prevented an unnecessary surgery. On May 15, 2007, Gilman delivered a letter to Gentilello finalizing his removal, which also cited his unprofessional interaction with coworkers and lack of professional leadership as causes for the demotion.

Plaintiff contends that the employees of University of Texas Southwestern Medical Center ("UTSW Medical Center") provide substandard care to their patients at Parkland Hospital when compared to the care afforded to patients of other University of Texas Southwestern ("UT Southwestern") facilities. He also contends that this disparity is caused by a practice of discrimination based on the patients' socioeconomic backgrounds. Plaintiff alleges that the lack of supervision of residents and teaching physicians amounts to "improper and illegal patient care." Pl.'s Am. Compl. ¶ 13. Plaintiff also alleges that he was demoted because of the conversation with Rege in which he brought these concerns to Rege's attention and that the reasons given for his removal are false and pretextual. Plaintiff further alleges that his demotion is symptomatic of a UT Southwestern policy to suppress criticism of its patient care practices. Defendants contend that Gentilello was removed for the stated reasons relating to his poor attitude and performance.

On September 13, 2007, Plaintiff filed suit against Defendants seeking damages under 42 U.S.C. § 1983 for two claims of alleged civil rights violations: 1) retaliation for the exercise of free speech in violation of the First Amendment to the United States Constitution and 2) deprivation of a constitutionally protected property right without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Defendants Rege and Gilman filed Defendants' Joint Motion to Dismiss on October 2, 2007.

## II. Standard for Dismissal Pursuant to Rule 12(b)(6)

To defeat a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1974 (2007). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496,

498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). A court, however, is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### III. Discussion

Defendants Rege and Gilman have filed their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's complaint fails to state a claim upon which relief can be granted. Defendants also argue that the court is barred from hearing this suit by the Eleventh Amendment. The court first addresses the jurisdictional question and then the sufficiency of each claim.

#### A. Eleventh Amendment Sovereign Immunity

Defendants argue that Gentilello's claims are barred by the Eleventh Amendment's guarantee of state sovereign immunity because they were acting in their official capacities when they decided to demote him. If Eleventh Amendment sovereign immunity applies, the court lacks jurisdiction to

hear the case. *Warnock v. Pecos County*, 88 F.3d 341, 343 (5th Cir. 1996). Plaintiff has amended his complaint to clarify his intent to sue Defendants in their individual capacities only. Because Plaintiff brings suit against Defendants only in their individual capacities, Eleventh Amendment immunity does not apply. *Modica v. Taylor*, 465 F.3d 174, 183 (5th Cir. 2006). After noting Plaintiff's clarification, Defendants concede that Eleventh Amendment immunity does not apply in this case.

### B. Free Speech Retaliation

As a professor employed by UTSW Medical School, Gentilello is a public employee for the purpose of the First Amendment retaliation claim. Defendants argue that Gentilello's speech is not protected by the First Amendment because he spoke in his capacity as an employee rather than as a citizen when he criticized the patient care practices at Parkland Hospital. Plaintiff disagrees and argues that because his speech involved matters of public concern, he spoke as a citizen.

To state a claim for First Amendment free speech retaliation, Plaintiff must set forth sufficient allegations that indicate, or from which one can reasonably infer, that "(1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action." *Charles v. Grief*, 522 F.3d 508, 510 n.2 (5th Cir. 2008) (citation omitted). At issue in this case is the second element: whether Plaintiff's speech involved a matter of public concern.

The Supreme Court added a threshold layer of analysis to the element of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *see also Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). With this addition, the First Amendment analysis has shifted from the "content of the

speech to the role the speaker occupied." *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007). The court must now first determine whether Plaintiff was speaking as a citizen or as part of his public job before it evaluates whether his speech involved a matter of public concern. *Garcetti*, 547 U.S. at 421; *Davis*, 518 F.3d at 312. Speech expressed as part of a public job means speech made pursuant to a public employee's official duties. *See Garcetti*, 547 U.S. at 421. "Pursuant to official duties" is defined as "activities undertaken in the course of performing one's job." *Davis*, 518 F.3d at 313. The court looks to a number of factors to determine whether an employee is speaking as a citizen or pursuant to his or her official duties. These factors include job descriptions, whether the employee communicated with coworkers or with supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally. *See Davis*, 518 F.3d at 312-14. The First Amendment will not protect statements made by public employees pursuant to their official duties. *Garcetti*, 547 U.S. at 421. Even speech of great social importance will not be protected unless it is expressed by an individual speaking as a citizen. *Williams*, 480 F.3d at 692.

In response to Defendants' motion, Plaintiff first attempts to distinguish his speech from the kind of work-related speech the court deemed unprotected in *Garcetti*. In *Garcetti*, the deputy district attorney conducted an investigation into the accuracy of an affidavit used to obtain a search warrant. 547 U.S. at 413-14. The deputy district attorney then wrote memoranda to his supervisors detailing what he considered to be "serious misrepresentations" contained in the affidavit. *Id.* The court determined that this speech was not protected because he spoke pursuant to his duties as a prosecutor. *Id.* at 421. Plaintiff argues that the seriousness of the "concrete violations" he witnessed firsthand distinguishes his case from the investigation into potential violations undertaken in *Garcetti*. Br. in

Supp. of Pl.'s Resp. 15. The court finds, however, that Plaintiff confuses the content of the speech with the role of the speaker. The seriousness or veracity of the violations complained of does not affect the role occupied by the speaker in voicing his complaints. "Even if the speech is of great public importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Williams*, 480 F.3d at 692.

Next, Plaintiff asserts that his speech was not made pursuant to his official duties because it was not required by his job duties. According to Plaintiff, his positions did not require him to "ensure that all residents comply with proper supervision and patient care procedures." Br. in Supp. of Pl.'s Resp. 15. The court is unpersuaded by this argument. Speech that closely relates to the employee's job functions may be considered speech made pursuant to the employee's official duties, even if not required by the employee's job description. *Williams*, 480 F.3d at 693-94. Furthermore, "[s]peech related to an employee's job duties that is directed within the chain of command is not protected." *Davis*, 518 F.3d at 315. Plaintiff relies on a misinterpretation of pre- and post-*Garcetti* precedent to support his contention. For example, Plaintiff relies on *Givhan v. Western Line Consolidated School District*, 439 U.S. 410 (1979), to argue that speech related to an employee's job duties and directed up the chain of command should be protected under the First Amendment. Br. in Supp. of Pl.'s Resp. 15. Plaintiff's reliance on *Givhan* is misplaced. *Givhan* instructs that First Amendment "freedom is [not] lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." *Givhan*, 439 U.S. at 696-97. In other words, that the speech is directed internally rather than externally is not dispositive. *Williams*, 480 F.3d at 694 n1. *Givhan* does not address whether the employee's speech was related to her job duties as a school teacher, nor does the decision turn on such distinctions. Therefore, Plaintiff's characterization of the

speech in *Givhan* as "related" to her job duties and his reliance on her First Amendment protection misinterpret *Givhan*'s precedential value.

Although Plaintiff places great emphasis on the contention that his speech was not "required" by his job duties, he stops short of alleging that his speech was not "related" to his job duties. Br. in Supp. of Pl.'s Resp 15-16. The court finds that Plaintiff's conversation with Defendant Rege was related to his job duties. The lack of supervision of which Plaintiff complained directly involved at least one of his patients. Even if supervision of residents and teaching assistants were not Gentilello's official responsibility as Department Chair or Distinguished Chair, it is reasonable to conclude that his responsibilities would include the supervision of care provided to his patients. Moreover, Gentilello's position of authority at Parkland Hospital gave him the special knowledge and the opportunity to recognize, identify, and report the perceived deficiencies in patient care up the chain of command to his immediate supervisor. *See Williams*, 480 F.3d at 694 (holding speech was made in course of performing job duties where athletic director's criticism of school principal was possible because of special knowledge and experience with athletic department procedures). Therefore, the court determines that Gentilello spoke as a public employee and not a citizen when he raised his concerns about the lack of supervision.

When all facts as alleged in Plaintiff's Amended Complaint are viewed in the light most favorable to him, Plaintiff fails to present sufficient allegations, which if proved, would show that his conversation with his immediate supervisor was unrelated to his job duties. For this reason, the court determines that Plaintiff has failed to state a claim upon which relief can be granted for First Amendment retaliation.

### C. Procedural Due Process

Defendants contend that Gentilello was provided adequate written notice of the reasons for his removal and an adequate opportunity to be heard during a two-month appeal process. Defs.' Mot. To Dismiss ¶¶ 11,12. Defendants also contend that as a part of Gentilello's removal process, he was afforded an investigation by a committee of his peers. *Id.* ¶ 12. Defendants further contend that Plaintiff has failed to specify what additional procedures, if any, would have satisfied due process. *Id.* ¶¶ 11-13. Plaintiff does not allege that additional procedures are required. He argues that Defendants' predetermination of the outcome of the current procedures precluded him from receiving fair and adequate process. Br. in Supp. of Pl.'s Resp. 17-18. According to Plaintiff, Defendants conducted the removal process in bad faith after predetermining his demotion for motives other than those stated in the notice letter, and as a result of this bad faith, the procedures in place did not afford Plaintiff a meaningful opportunity to be heard. *Id.*

To state a claim for deprivation of Fourteenth Amendment procedural due process under section 1983, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (citation omitted). "Procedural due process is not itself an independent right, but merely a condition precedent to the deprivation of a life, liberty or property interest. . . . Once we find that a protected interest is implicated, the question remains what process is due." *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1037 (5th Cir. 1982) (citation omitted). To determine what process is due, the court must balance three factors: "[] the private interests involved; [] the risk of erroneous deprivation of those interests through the procedures used, and the probable value of additional procedures; and [] the government's interest, including the fiscal and administrative burden that

additional procedures would entail." *Williams v. Taylor*, 677 F.2d 510, 514 (5th Cir. 1982). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted).

Gentilello complains of the sufficiency of the procedures afforded to him during his demotion. He contends that Defendants formed a bias against him that prevented him from receiving a fair removal process. "An impartial decisionmaker is a basic constituent of minimum due process." *Megill v. Board of Regents*, 541 F.2d 1073, 1079 (5th Cir. 1976); *see also Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1996). Moreover, "[a]n adjudicative decision maker should be disqualified if he or she has prejudged disputed adjudicative issues." *Valley*, 118 F.3d at 1053. Plaintiff alleges that he spoke with Defendant Rege regarding the lack of adequate supervision, inadequate patient care, and improper operating room and treatment protocol he perceived at UTSW Medical Center and Parkland Hospital. Pl.'s Am. Compl. ¶ 10. According to Plaintiff, following this conversation, Rege failed to address his concerns and instead sent him a letter notifying him of his removal. *Id.* ¶ 12-13. Plaintiff argues that this notice letter provided false justifications for his removal to mask Rege's retaliatory motive. *Id.* ¶ 13. Plaintiff also argues that Gilman then joined in Rege's retaliatory purpose by finalizing Plaintiff's removal. *Id.* ¶ 14. Finally, Plaintiff argues that his removal was driven by Defendants' bad-faith predetermination of the outcome of the removal process. *Id.* ¶¶ 13-14. According to Plaintiff, "Defendants' bad faith prevented [him] from obtaining proper due process." *Id.* ¶ 27. Accepting all well-pleaded facts in the complaint as true and viewing them in the light most favorable to Plaintiff, the court finds that Plaintiff states a claim for deprivation of a property interest without due process of law.

## IV. Request for Leave to Amend Complaint

Plaintiff asks the court to grant him leave to amend his complaint should Defendants' Joint Motion to Dismiss be granted. Br. in Supp. of Pl.'s Resp. 19. The court may grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a). In this case, justice is not served by permitting Plaintiff to further amend his complaint. The court does not believe that further amendment will result in additional facts that would change the character of Plaintiff's First Amendment retaliation claim because he has pleaded that he was speaking as a citizen. The court has determined, however, that his speech was directly related to the performance of his job. In light of the court's ruling, there are no plausible facts that Plaintiff can plead without changing his theory of the case, and Plaintiff cannot state a claim upon which relief can be granted. Therefore, any further attempts to amend the complaint would be futile and would unnecessarily delay the resolution of Plaintiff's First Amendment claim. Accordingly, the court **denies** Plaintiff's request for leave to amend.

## V. Conclusion

For the reasons herein stated, the court determines that the complaint sufficiently alleges a claim for denial of due process, but fails to state a claim for free speech retaliation. Accordingly, the court **grants** Defendants' Joint Motion to Dismiss as to Plaintiff's claim for free speech retaliation and **denies** the motion as to Plaintiff's due process claim.

**It is so ordered** this 30th day of June, 2008.

Sam A. Lindsay
United States District Judge